The STATE of Ohio, Appellee,

v.

RIOS, Appellant.

[Cite as *State v. Rios* (1991), 75 Ohio App.3d 288.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 58934.

Decided July 29, 1991.

*Robert Trusiak,* Assistant Prosecuting Attorney, for appellee.
*Mary Ann O. Rini,* for appellant.

---

Nahra, Judge.

In 1987, Pedro Rios, defendant-appellant, was on parole and worked at the Cleveland Treatment Center as an outreach counselor for drug addicts. Through his work at the Cleveland Treatment Center, Rios met Fred Boigner, who expressed an interest in drug treatment. Boigner met with Rios on a number of occasions for counseling. After several of these meetings, Boigner asked Rios to arrange a drug transaction for him. Boigner served as an informant for the Cleveland Police Department.

Rios sold cocaine to Boigner on three separate occasions: January 27, 1989, February 3, 1989 and February 17, 1989. Detective Zaller of the Cleveland Police Department's Narcotics Unit testified that he observed the above three transactions. Detective Zaller testified that on January 27, 1989, he arrived in a vehicle at a Burger King in the area of Pearl Road and Broadview Road at about 12:30 p.m. The vehicle and the confidential informant, Boigner, who accompanied Zaller, were both searched prior to arrival. Rios arrived in his 1983 Ford, at which time Boigner provided him with $1,100, with which Rios

had agreed to purchase one ounce of cocaine. Rios received the money and told Boigner to wait at Adolph's Gym, a location across the street from the Burger King. Rios entered his car and left the area. Detective Zaller further testified that Rios returned to the area forty-five minutes later. Rios entered the gym, came upstairs and delivered approximately an ounce of cocaine to Boigner.

Detective Piekarczyk corroborated Detective Zaller's testimony about the three separate transactions insofar as he was a part of the surveillance team assigned to observe Rios. On February 3, 1989 and on February 17, 1989, the same procedures were employed with respect to searching Boigner and the vehicle in which he sat prior to the transaction. On each of these two occasions, Boigner gave Rios $1,100.00 as the set figure for which to purchase one ounce of cocaine. Rios proceeded to do so, as he left the area near the Burger King in his automobile and returned with the cocaine. Detective Piekarczyk and Detective Zaller testified that they observed Rios return with the cocaine that was delivered to Boigner.

Testimony at trial revealed that the substance delivered by Rios on all three occasions was cocaine in an amount in excess of bulk but less than three times bulk.

Rios testified that Boigner tempted him to sell drugs by offering to share with Rios some of the cocaine that Boigner purchased from him.

Prior to trial, the state filed a motion *in limine* to preclude the testimony of an expert psychiatrist, Dr. Jonathan Dunn, the medical director of the chemical dependency treatment program at Metro Health Medical Center. The state sought to preclude Dunn's testimony with respect to Rios's capacity to resist the temptation of cocaine use and its application to Rios's defense of entrapment. During voir dire, the trial court posed a variety of questions to Dr. Dunn. Dr. Dunn stated that a drug dependent person might be powerless to resist temptation depending on the circumstances. Insofar as he had not examined Rios, Dr. Dunn could not say whether Rios was drug dependent. The trial court granted the state's motion *in limine* and refused to admit Dr. Dunn's testimony.

On January 27, 1989, Rios was indicted as follows: on three counts of drug sales in the bulk amount with a prior conviction pursuant to R.C. 2925.03, three counts of possession of criminal tools in violation of R.C. 2923.24, and three counts of use of a motor vehicle for the purpose of conducting a drug sale pursuant to R.C. 2925.13.

Trial ensued and a jury found Rios guilty of the above counts. Thereafter, the trial court sentenced Rios. This timely appeal follows.

## I

Appellant's first assignment of error states:

"The court erred in entering a judgment of conviction as the evidence is against the manifest weight of the evidence as it relates to the defense of entrapment."

The weight to be given evidence and the credibility of witnesses are determinations to be made by the triers of fact. *State v. Thomas* (1982), 70 Ohio St.2d 79, 24 O.O.3d 150, 434 N.E.2d 1356. If there was sufficient evidence for the triers of fact to find a defendant guilty beyond a reasonable doubt this court will not reverse a guilty verdict based on manifest weight of the evidence. *State v. Brown* (1988), 38 Ohio St.3d 305, 528 N.E.2d 523, paragraph four of the syllabus, certiorari denied (1989), 489 U.S. 1040, 109 S.Ct. 1177, 103 L.Ed.2d 239.

Rios asserts that he was entrapped insofar as the police encouraged him to engage in cocaine sales by way of a confidential informant. Rios contends that he had a long battle with a chemical dependency on cocaine and that he would not have engaged in the drug sales but for Boigner's encouragement.

In *State v. Doran* (1983), 5 Ohio St.3d 187, 5 OBR 404, 449 N.E.2d 1295, paragraph one of the syllabus, the Supreme Court of Ohio defined "entrapment" as follows:

"The defense of entrapment is established where the criminal design originates with the officials of the government, and they implant in the mind of an innocent person the disposition to commit the alleged offense and induce its commission in order to prosecute."

However, entrapment does not exist when it is shown that the accused was predisposed to commit the offense, and the state merely provided the accused with the opportunity to commit the offense. *Id.* at 192, 5 OBR at 409, 449 N.E.2d at 1299. Entrapment is an affirmative defense and Rios has the burden of establishing this defense by a preponderance of the evidence. *Id.* at 193–194, 5 OBR at 410, 449 N.E.2d at 1300. Once it is established, the state can rebut the entrapment defense by showing that the defendant was predisposed to commit the crime and that the state merely provided the opportunity to commit the crime. *State v. Italiano* (1985), 18 Ohio St.3d 38, 18 OBR 75, 479 N.E.2d 857.

Our review of the record reveals that Rios failed to establish that he was entrapped. The state initiated the request that Rios arrange a drug transaction. The request furnished Rios with an opportunity to commit a crime. We

believe that the criminal intent originated in the mind of the accused and that merely providing Rios with the opportunity to arrange a drug transaction did not constitute entrapment. See *State v. Miller* (1948), 85 Ohio App. 376, 378, 40 O.O. 247, 88 N.E.2d 614, 615.

The jury's verdict was not against the manifest weight of the evidence. We find no reason to disturb the jury's assessment of the witnesses' credibility.

Accordingly, appellant's assignment of error is overruled.

## II

Appellant's second assignment of error states:

"The court erred in failing to admit the testimony of an expert witness on the issue of the appellant's drug dependency."

During voir dire, the trial court determined that the testimony of Dr. Dunn failed to satisfy the requirements of Evid.R. 702 insofar as the issue of entrapment is one for the jury and testimony by an expert on the effects of government inducement would invade the jury's province. In addition, the trial court precluded Dr. Dunn's testimony regarding Rios's lack of capacity to resist an inducement insofar as such testimony went to the issue of diminished capacity, which is a defense not recognized in Ohio. *State v. Wilcox* (1982), 70 Ohio St.2d 182, 24 O.O.3d 284, 436 N.E.2d 523, paragraph one of the syllabus; *State v. Cooey* (1989), 46 Ohio St.3d 20, 544 N.E.2d 895. The trial court also stated that there was no evidence that Rios was dependent on cocaine.

Rios acknowledges that expert testimony on the issue of diminished capacity must be excluded in Ohio. Instead, Rios argues that the trial court erred by refusing to admit Dr. Dunn's testimony concerning the nature of drug dependency and its effect on the human psyche insofar as such testimony would have assisted the jury in determining facts beyond its common knowledge. See Evid.R. 702.

There is some authority that expert testimony may be admitted on the issue of a defendant's predisposition to commit a crime. *State v. Woods* (1984), 20 Ohio Misc.2d 1, 20 OBR 72, 484 N.E.2d 773. In *Woods*, the Court of Common Pleas of Clermont County held that expert testimony on the effect of government inducements upon the defendant's susceptibility should be excluded; however, *Woods* also held that expert testimony on the predisposition of the accused to commit the crime may be admitted.

Here, Dr. Dunn's testimony was properly excluded, since his testimony was directed to the effect of government inducement on Rios in view of the offer made by Boigner that he would give Rios some cocaine for arranging a drug sale. Moreover, in the case at bar, Dr. Dunn admitted that he did not know

whether or not Rios was drug dependent. As a result, Dr. Dunn did not have an adequate factual foundation on which to testify about Rios's susceptibility due to chemical dependency and the issue of his predisposition, or lack thereof, to commit the crime.

We also note that the admission of such expert testimony here is a matter left to the discretion of the trial court. *State v. Williams* (1983), 4 Ohio St.3d 53, 58, 4 OBR 144, 148, 446 N.E.2d 444, 447; see *State v. Dapice* (1989), 57 Ohio App.3d 99, 105, 566 N.E.2d 1261, 1268. We do not believe that the trial court abused its discretion in refusing to admit the testimony of Dr. Dunn.

Appellant's assignment of error is overruled.

Accordingly, the judgment of the trial court is affirmed.

*Judgment affirmed.*

MATIA, P.J., and JOHN F. CORRIGAN, J., concur.