JOURNAL ENTRY and OPINION
{¶ 1} Anthony Braxton appeals his convictions for felonious assault upon a police officer, failure to comply with an order or signal of a police officer, and receiving stolen property. We find no merit to the appeal and affirm.
{¶ 2} Officer Holcomb testified at Braxton's jury trial that on May 31, 2001, he was at the intersection of East 90th Street and St. Clair Avenue issuing a traffic citation to a motorist. As the officer walked back to his patrol car, he heard the high revving of an engine and turned to see a brown Cadillac heading directly towards him. He dove out of the way and saw the car speed past and head the wrong way on a one-way street.
{¶ 3} The officer got into his car to chase the suspect and issued a radio broadcast to other officers for assistance. The chase occurred on various residential streets where children were playing, and eventually the suspect proceeded to Martin Luther King Boulevard (MLK) traveling about 45 miles per hour in a 25 mile per hour zone. The suspect passed several vehicles, ran a red light, and then turned left onto Lakeshore Boulevard. He then made a U-turn and returned to MLK where he swerved off the road and crashed into a steep embankment.
{¶ 4} The driver jumped out of the vehicle and fled through the bushes. Officer Holcomb noticed he was wearing a handyman's uniform or mechanic's uniform, a blue jean jacket, and a cap.
{¶ 5} The officers could not initially locate the driver so Cleveland Police helicopters were called for assistance. About twenty minutes later, the police spotted the suspect wading in a creek. The suspect was stopped, detained, and identified by Officer Holcomb, who noted that the suspect was wearing the same clothing as the man he saw jump from the car.
{¶ 6} The Cadillac had a peeled steering column and a stolen license plate. A computer check of the Cadillac's vehicle identification number came back as unknown, which Officer Holcomb testified is a common problem with stolen cars.
{¶ 7} Officer Marazzi stated that he was the first officer to spot Braxton in the creek. According to Marazzi, Braxton was thigh deep in water about five yards inside a tunnel in the creek. Officer Marazzi yelled to Braxton to come back, but he continued to wade to the other side of the tunnel. Officer Marazzi alerted other officers to Braxton's location and officers on the other side of the tunnel detained him.
{¶ 8} Shakira Tolbert testified on Braxton's behalf. Her house is located in the area of the initial traffic stop. She testified that the officer had stopped the brown Cadillac and as soon as the officer stepped outside the zone car, the Cadillac sped off. According to Ms. Tolbert, Officer Holcomb was never in danger because he was standing at the rear of the car when it sped off. She admitted that she never called the police to report what she saw.
{¶ 9} Andre McDonald testified that he was a real estate investor who employed Braxton as the foreman of his crew which renovates homes he purchases. He testified that it would be out of character for Braxton to try to run down a police officer. On cross-examination, McDonald testified that, on the day of the incident, he dropped off Braxton at the East 72nd Street exit of the freeway, down by the lake, at around 7:00 or 8:00 p.m. because Braxton lived in the area of Wade Park. McDonald admitted that this was not near Braxton's residence. He then changed his story and said he dropped him off at MLK. He stated that he never notified police of this because he did not think it was important.
{¶ 10} Latoya Robinson, Braxton's twelve-year-old daughter, and Jennie Jones, Braxton's good friend, both testified that Braxton was not the kind of person who would try to run over a police officer.
{¶ 11} The jury found Braxton guilty as charged. The trial court sentenced him to the minimum of three years for felonious assault on a police officer and the minimum of six months for receiving stolen property, to run concurrently. The court also sentenced him to three years for failure to comply, which carried a mandatory consecutive sentence.
{¶ 12} Braxton appeals and raises six assignments of error.
 BATSON CLAIM
{¶ 13} In his first assignment of error, Braxton argues that the prosecutor engaged in racial discrimination by exercising peremptory challenges against two African-American jurors. Braxton contends that the trial court failed to conduct a Batson inquiry to determine if the prosecutor had a race-neutral reason to dismiss the jurors.
{¶ 14} It is well settled that a prosecutor ordinarily is entitled to exercise permitted peremptory challenges for any reason at all, so long as that reason is related to the prosecutor's view concerning the outcome of the case to be tried. The Equal Protection Clause of the Fourteenth Amendment forbids the prosecutor to challenge potential jurors on account of their race or on the assumption that black jurors as a group will be unable impartially to consider the prosecution's case against a black defendant. Batson v. Kentucky (1986), 476 U.S. 79, 89. The Ohio Supreme Court summarized the three-prong Batson test in Hicks v. Westinghouse Materials Co. (1997), 78 Ohio St.3d 95, 98, as follows:
 {¶ 15} First, a party opposing a peremptory challenge must demonstrate a prima-facie case of racial discrimination in the use of the strike. Id. at 96, 106 S.Ct. at 1723, 90 L.E.2d at 87. To establish a prima-facie case, a litigant must show he or she is a member of a cognizable racial group and that the peremptory challenge will remove a member of the litigant's race from the venire. The peremptory-challenge opponent is entitled to rely on the fact that the strike is an inherently `discriminating' device, permitting `those to discriminate who are of a mind to discriminate.' State v. Hernandez (1992), 63 Ohio St.3d 577, 582, 589 N.E.2d 1310, 1313, certiorari denied (1992), 506 U.S. 898, 113 S.Ct. 279, 121 L.Ed.2d 206. The litigant must then show an inference or inferences of racial discrimination by the striking party. The trial court should consider all relevant circumstances in determining whether a prima-facie case exists, including statements by counsel exercising the peremptory challenge, counsel's questions during voir dire, and whether a pattern of strikes against minority venire members is present. See Batson at 96-97, 106 S.Ct. at 1723, 90 L.Ed.2d at 88.
{¶ 16} Assuming a prima-facie case exists, the striking party must then articulate a race-neutral explanation `related to the particular case to be tried.' Id. at 98, 106 S.Ct. at 1724, 90 L.Ed.2d at 88. A simple affirmation of general good faith will not suffice. However, the explanation `need not rise to the level justifying exercise of a challenge for cause.' Id. at 97, 106 S.Ct. at 1723, 90 L.Ed.2d at 88. The critical issue is whether discriminatory intent is inherent in counsel's explanation for use of the strike; intent is present if the explanation is merely a pretext for exclusion on the basis of race. Hernandez v. New York (1991), 500 U.S. 352, 363, 111 S.Ct. 1859, 1868, 114 L.Ed.2d 395,408.
{¶ 17} Last, the trial court must determine whether the party opposing the peremptory strike has proved purposeful discrimination. Purkett v. Elem (1995), 514 U.S. 765, 766-767, 115 S.Ct. 1769, 1770,131 L.Ed.2d 834, 839. It is at this stage that the persuasiveness, and credibility, of the justification offered by the striking party becomes relevant. Id. at 768, 115 S.Ct. at 1771, 131 L.Ed.2d at 839. The critical question, which the trial judge must resolve, is whether counsel's race-neutral explanation should be believed. Hernandez v. New York,500 U.S. at 365, 111 S.Ct. at 1869, 114 L.Ed.2d at 409.
{¶ 18} In the instant case, the defense sought a mistrial based on the fact that the State removed two black jurors. When pressed for an explanation as to the grounds for the peremptory challenge, the State explained that one of the jurors worked at the public defender's office for 15 years. According to the State, the second juror indicated by his body language during voir dire arms crossed and head bent over that he did not desire to sit on the case. The prosecutor concluded that such an individual would not be attentive.
{¶ 19} Once the prosecutor offers a race-neutral basis for his exercise of peremptory challenges, the trial court then has the duty to determine if the defendant has established purposeful discrimination. Hernandez v. New York (1991), 500 U.S. 352, 363. The trial court's decision on the ultimate question of discriminatory intent represents a finding of fact of the sort accorded great deference on appeal. Id. at 364.
{¶ 20} In the case at bar, the trial court, after appropriate inquiry, rejected the notion that the prosecutor's challenge rested on perceived stereotypical assumptions or the intention of excluding African-American jurors. Nothing in the prosecutor's explanation showed that he chose to exclude jurors on the basis of race. As the Court noted in Hernandez:
 {¶ 21} In the typical peremptory challenge inquiry, the decisive question will be whether counsel's race-neutral-explanation for a peremptory challenge should be believed. There will seldom be much evidence bearing on that issue, and the best evidence often will be the demeanor of the attorney who exercises the challenge. As with the state of mind of a juror, evaluation of the prosecutor's state of mind based on demeanor and credibility lies `peculiarly within a trial judge's province.' Id. at 365.
{¶ 22} Braxton failed to make a prima facie case of purposeful discrimination, the prosecutor provided a bona fide race-neutral explanation for the challenge, and the court's determination was not clearly erroneous.
{¶ 23} Braxton's first assignment of error is therefore overruled.
 SUFFICIENCY AND MANIFEST WEIGHT OF THE EVIDENCE
{¶ 24} Braxton claims in his second and third assignments of error that there was insufficient evidence to show that he knowingly intended to injure the officer and that his convictions were against the weight of the evidence.
{¶ 25} The standard of review with regard to the sufficiency of evidence is set forth in State v. Bridgeman (1978), 55 Ohio St.2d 261, syllabus:
 {¶ 26} Pursuant to Criminal Rule 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt. See, also, State v. Apanovitch (1987), 33 Ohio St.3d 19, 23; State v. Davis (1988), 49 Ohio App.3d 109, 113. Bridgeman must be interpreted in light of the sufficiency test outlined in State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus, in which the Ohio Supreme Court held:
 {¶ 27} An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence submitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. (Jackson v. Virginia [1979], 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, followed.)
{¶ 28} When the argument is made that the conviction is against the manifest weight of the evidence, the appellate court is obliged to consider the weight of the evidence, not its mere legal sufficiency. The defendant has a heavy burden in overcoming the fact finder's verdict. As this court has stated:
 {¶ 29} The weight to be given evidence and the credibility of witnesses are determinations to be made by the triers of fact. State v. Thomas (1982), 70 Ohio St.2d 79, 24 O.O.3d 150, 434 N.E.2d 1356. If there was sufficient evidence for the triers of fact to find defendant guilty beyond a reasonable doubt this court will not reverse a guilty verdict based on manifest weight of the evidence. State v. Brown (1988), 38 Ohio St.3d 305, 528 N.E.2d 523, paragraph four of the syllabus, certiorari denied (1989), 489 U.S. 1040, 109 S.Ct. 1177, 103 L.Ed.2d 239. State v. Rios (1991), 75 Ohio App.3d 288, 291. See, also, State v. Jenks (1991), 61 Ohio St.3d 259, 273.
{¶ 30} Felonious assault is defined in pertinent part pursuant to R.C. 2903.11 as:
 {¶ 31} (A) No person shall knowingly do either of the following:
{¶ 32} * * *
 {¶ 33} (2) Cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance.
{¶ 34} * * *
 {¶ 35} (D) * * * If the victim of the offense is a peace officer * * * felonious assault is a felony of the first degree.
{¶ 36} The definition of knowingly as defined pursuant to R.C.2901.22(B) provides that "a person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature." A defendant, therefore, acts knowingly, when, although not intending the result, he or she is nevertheless aware that the result will probably occur. State v. Edwards (1992), 83 Ohio App.3d 357, 361.
{¶ 37} A review of the record indicates that there was sufficient evidence presented that Braxton knowingly intended to harm Officer Holcomb. The officer testified that he heard a car engine revving and turned to see a car coming directly at him at a high rate of speed, requiring him to dive out of the way. The suspect then led the police in a high-speed chase. Therefore, the jury's verdict of felonious assault on a police officer is supported by sufficient evidence.
{¶ 38} Based on the evidence of Braxton's trying to run down Officer Holcomb and the ensuing police chase, the jury's finding Braxton guilty of felonious assault upon a police officer and failure to comply with an order or signal of a police officer is also not against the manifest weight of the evidence.
{¶ 39} Evidence was also presented that the license plate on Braxton's car was stolen from another vehicle, the car's steering column was peeled, and the car had an unknown vehicle identification number, all of which supports Braxton's receiving stolen property conviction.
{¶ 40} The second and third assignments of error are overruled.
 RECALLING OF A WITNESS FOR CROSS-EXAMINATION
{¶ 41} Braxton maintains in his fourth assignment of error that the trial court violated his right to confrontation by prohibiting him from recalling Officer Holcomb as a witness. Braxton contended that recalling the witness was necessary to elicit evidence from Officer Holcomb regarding whether he saw Ms. Tolbert on her porch at the time Braxton allegedly tried to run him over. Ms. Tolbert had testified that Braxton did not attempt to run over the officer, but only sped away after being stopped by the officer.
{¶ 42} The recall of a witness is within the sound discretion of the trial court. State v. Spirko (1991), 59 Ohio St.3d 1, 28; Evid.R. 611(A).
{¶ 43} The trial court did not abuse its discretion in refusing to allow Braxton to recall Officer Holcomb. Defense counsel had thoroughly cross-examined the officer. Testimony as to whether the officer saw Ms. Tolbert on her porch was not so significant as to require recall. The discrepancies between the testimony of Officer Holcomb and Ms. Tolbert regarding the chain of events were obviously apparent. Further impeachment was therefore not necessary.
{¶ 44} Braxton's fourth assignment of error is overruled.
 LIMITATION OF COMMENTARY ON ALIBI TESTIMONY
{¶ 45} Braxton argues in his fifth assignment of error that the trial court erred in not permitting him in closing argument to refer to the fact that Mr. McDonald had testified that he dropped off Braxton in the area where he was found wading in the creek. The trial court based this decision on the fact that Crim.R. 12.1 requires notice of alibi evidence seven days in advance of trial.
{¶ 46} During the State's cross-examination of McDonald, he testified that he had dropped off Braxton in the area where he was found wading in the creek. Defense counsel claimed that this testimony was a complete surprise. Such testimony constitutes alibi testimony because if Braxton was dropped off in that area, he could not have been the person who attempted to run over Officer Holcomb and led the police in a high-speed chase.
{¶ 47} The purpose of pretrial discovery rules such as the alibi notice requirement of Crim.R. 12.1 is to insure a fair trial for both the State and the defendant. State v. Smith (1977), 50 Ohio St.2d 51, 53, citing Williams v. Florida (1970), 399 U.S. 78, 26 L.Ed.2d 446,90 S.Ct. 1893. In keeping with that purpose, Crim.R. 12.1 requires the defendant to file timely notice of his intent to raise an alibi defense, but it also grants the trial court the discretion to waive that requirement and to admit unfiled alibi testimony if it is in the "interest of justice" to do so. Id. When the alibi evidence does not surprise or otherwise prejudice the prosecution's case, and when it is apparent that the defense acted in good faith, the exclusion of alibi evidence can constitute an abuse of discretion. Id.
{¶ 48} In the instant case, the previous questions which defense counsel asked of the officers regarding whether it was possible that Braxton had been dropped off in the area where they found him, led the court to conclude that defense counsel was not truly surprised by McDonald's alibi testimony. The trial court, however, did not strike the testimony, but used a less harsh sanction of not permitting defense counsel to refer to McDonald's testimony in closing but allowing the State to comment upon McDonald's credibility.
{¶ 49} The trial court did not abuse its discretion in imposing this restriction because the State had no opportunity to interview or investigate Braxton's alibi witness and was prejudiced by the apparent tactics of defense counsel as to the alibi defense. The State had fully prepared its case and trial strategy while under the impression that Braxton did not plan on calling an alibi witness.
{¶ 50} The fifth assignment of error is overruled.
 SENTENCING
{¶ 51} In his sixth assignment of error, Braxton claims the trial court's sentence of six years was disproportionate to the sentence imposed for similar crimes.
{¶ 52} An appellate court can only reverse or modify a sentence if it clearly and convincingly finds that the record does not support the sentence, or that the sentence is contrary to law. R.C. 2953.08(G). The underlying purpose of sentencing is to protect the public from future crime and punish the offender. R.C. 2929.11.
{¶ 53} In the instant case, the trial court stated that it viewed the police officer's video tape of the chase and noted the high rate of speed and the stop signs and signals that were ignored. The trial court also noted that the tape indicated the presence of children on some of the narrow residential streets and that Braxton narrowly missed hitting a car that was entering MLK. The trial court therefore found that the chase put both the police officers and the community at risk.
{¶ 54} The court then imposed the minimum sentence for receiving stolen property and felonious assault of a police officer. However, for the failure to comply charge, the trial court sentenced Braxton to more than the minimum one-year term, finding that the minimum term would demean the seriousness of the crime, and therefore imposed a three-year sentence. This term was run consecutively with the other terms as mandated by R.C. 2921.331.
{¶ 55} Based on the above factors, we find the trial court's sentence is supported by the record and is not disproportionate.
{¶ 56} Braxton's sixth assignment of error is overruled.
Judgment is affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
JAMES D. SWEENEY, J. CONCURS; TIMOTHY E. McMONAGLE, A.J., CONCURS IN JUDGMENT ONLY.
N.B. This entry is an announcement of the court's decision. See App.R. 22(B), 22(D) and 26(A); Loc. App.R. 22. This decision will be journalized and will become the judgment and order of the court pursuant to App.R. 22(E) unless a motion for reconsideration with supporting brief, per App.R. 26(A), is filed within ten (10) days of the announcement of the court's decision. The time period for review by the Supreme Court of Ohio shall begin to run upon the journalization of this court's announcement of decision by the clerk per App.R. 22(E). See, also, S.Ct.Prac.R. II, Section 2(A)(1).