JOURNAL ENTRY and OPINION.
{¶ 1} Defendant-appellant Pietro Salemi appeals his conviction for felonious assault entered after a jury trial. We find no merit to the appeal and affirm.
 {¶ 2} Salemi and co-defendant, Clint Welsh, were each indicted for one count of felonious assault.[1] The following evidence was presented at their jury trial:
 {¶ 3} The victim, Steven Boukis, and his friend John Grilles testified that on October 4, 2001, they were at a bar called Mercury, located on West Sixth Street in Cleveland. The men were seated at the end of the bar, when Pietro Salemi, Clint Welsh, and a third man with "dirty blond" hair and heavily tattooed arms, approached Boukis. Boukis was familiar with the men because he saw them often at the bars he frequented. However, he knew only Welsh and Salemi's first names.
 {¶ 4} According to Boukis, the men asked him about his relationship with a woman named Nikki Monday, with whom Boukis had gone out a few times. Apparently, the woman was also dating Salemi. Boukis told Salemi that he could "have her" and that he did not want any problems.
 {¶ 5} Boukis testified that several days before this confrontation, Salemi had confronted him at another bar regarding the woman. At that time, Boukis told Salemi that he could "have her" because he "was not that desperate."
 {¶ 6} Grilles testified that after Boukis conversed with the men for several minutes, he began to fear for his and Boukis' safety and told Boukis, "Let's go." They left the bar and walked to Boukis' vehicle. As they were getting in, they saw Welsh, Salemi, and the man with the tattoos enter a black Lincoln Navigator. Fearful that the men were going to follow them, Boukis wrote down the license plate number. The men, however, did not follow.
 {¶ 7} On their way home, Boukis received a telephone call inviting him to a party at the downtown apartment of a friend named Jennifer Rose. He and Grilles returned downtown and joined the party which included several people, one of whom was named Willie Armstead.
 {¶ 8} Around 5:00 a.m., Boukis and Grilles left the party, and as they walked to Boukis' vehicle, Salemi came around the corner of the building and punched Boukis in the side of the face. According to Grilles, Salemi then threw Boukis face-down onto the pavement, sat on his back, and began punching him on both sides of the face. Grilles noticed that Salemi had changed his clothes and was wearing a black sweater, sweat pants, and a winter hat.
 {¶ 9} Grilles attempted to get back into the apartment building, but the doors were locked. He returned in an attempt to help Boukis, but Welsh told him, "Stay out of it." Fearing he would be next, Grilles hid behind a concrete barrier and called 911. He stayed in hiding until Boukis stopped screaming. Grilles then saw both Salemi and Welsh run off.
 {¶ 10} According to Boukis, while Salemi was beating him, he was yelling, "You want to lie to me, bitch? Want to fuck with me bitch?" He estimated he was punched in the head by Salemi twenty to thirty times. He also stated that he was kicked several times in the head by a someone wearing cowboy boots. The last thing he remembered was the boot kicking his head. He then lost consciousness. Both Boukis and Grilles testified that Welsh was wearing cowboy boots that night.
 {¶ 11} After Salemi and Welsh left, Grilles picked up a semi-conscious Boukis and carried him to his vehicle. Grilles testified that Boukis' cheeks were red and bruised and he had a huge gash on his head. Grilles flagged down a patrol car, and the officer escorted them to Lutheran Hospital.
 {¶ 12} According to Boukis, he suffered from headaches and "tingling" for "countless days" after the assault. He testified that he has herniated discs and minor nerve damage to his forehead. Boukis stated that he goes to therapy three times per week for his back pain, takes numerous drugs for the pain and will require surgery to straighten the discs.
 {¶ 13} Jennifer Rose testified that she did not hear about the assault until several days later. She stated that both Boukis and Grilles were at her apartment prior to the assault, and that Willie Armstead was also present.
 {¶ 14} Detective Zenkewicz investigated the case. He was suspicious of how Salemi and Welsh knew where Boukis and Grilles were, so he subpoenaed the cell phone records of the people who attended Jennifer Rose's party. He also traced the license plate that Boukis provided, to Linda Welsh, Clint Welsh's mother.
 {¶ 15} According to Penny Burlingson of Verizon Wireless, a review of Willie Armstead's cell phone records indicated that he placed a call to Salemi's cell phone on October 5 at approximately 4:57 a.m. She stated that Salemi's cell phone records indicated heavy activity on October 5 between the hours of 2:00 a.m. and 5:00 a.m., and that Salemi called Armstead's cell phone at 4:54 a.m.
 {¶ 16} Scott and Gina Savoca, both friends of Salemi, claimed that Salemi was with Scott Savoca that night. They went to a local bar to celebrate Salemi's upcoming birthday, then returned to Savoca's home. Salemi's father contended that Salemi slept at home that night and that they both went out to breakfast at around 5:00 a.m.
 {¶ 17} Matt Paniguitti testified that he went with Clint Welsh to a bar called the Groovy Little Café at around midnight. They left around 1:00 a.m. Because Welsh was too drunk to drive home, Paniguitti drove him back to his house, where Welsh spent the night.
 {¶ 18} Based on the above evidence, the jury found both men guilty of felonious assault. Both Salemi and Welsh were sentenced to four-year prison terms.
 {¶ 19} Salemi raises three assignments of error on appeal.
Jury Instruction on Assault
 {¶ 20} In his first assignment of error, Salemi argues that the trial court erred by failing to instruct the jury on the lesser included offense of assault because there was no evidence of serious physical harm.
 {¶ 21} In State v. Davis (1983), 6 Ohio St.3d 91, 95, the Ohio Supreme Court held:
 {¶ 22} "* * * merely because one offense can be a lesser included offense of another does not mean that a court must always instruct on both offenses where the greater offense is charged. * * * The persuasiveness of the evidence regarding the lesser included offense is irrelevant. If under any reasonable view of the evidence it is possible for the trier of fact to find the defendant not guilty of the greater offense and guilty of the lesser offense, the instruction on the lesser included offense must be given. The evidence must be considered in the light most favorable to defendant."
 {¶ 23} "Serious physical harm" is defined by R.C. 2901.01(A)(5) as follows:
 {¶ 24} "(5) `Serious physical harm to persons' means any of the following:
 {¶ 25} "* * *
 {¶ 26} "(c) Any physical harm which involves some permanent incapacity, whether partial or total, or which involves some temporary, substantial incapacity.
 {¶ 27} "(d) Any physical harm which involves some permanent disfigurement, or which involves some temporary, serious disfigurement.
 {¶ 28} "(e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain."
 {¶ 29} Boukis testified that he lost consciousness upon being kicked by the person wearing cowboy boots. His eyes were swollen shut, he suffered from headaches and tingling sensation days after the assault, and had chronic backache due to the herniated discs. He testified that he still takes medication to relieve his pain and will require surgery to repair the injury to his back. Given the amount of evidence regarding the seriousness of Boukis' injuries, the trial court did not err in refusing to instruct the jury on assault.
 {¶ 30} Welsh's first assignment of error is overruled.
Manifest Weight of the Evidence
 {¶ 31} In his second assignment of error, Salemi argues that his conviction for felonious assault was not supported by the manifest weight of the evidence because Boukis' hospital records did not support his testimony regarding the extent of his injuries or pain.
 {¶ 32} When the argument is made that the conviction is against the manifest weight of the evidence, the appellate court is obliged to consider the weight of the evidence, not its mere legal sufficiency. The defendant has a heavy burden in overcoming the fact finder's verdict. As this court has stated:
 {¶ 33} "The weight to be given evidence and the credibility of witnesses are determinations to be made by the triers of fact. State v.Thomas (1982), 70 Ohio St.2d 79, 24 O.O.3d 150, 434 N.E.2d 1356. If there was sufficient evidence for the triers of fact to find defendant guilty beyond a reasonable doubt this court will not reverse a guilty verdict based on manifest weight of the evidence. State v. Brown (1988),38 Ohio St.3d 305, 528 N.E.2d 523, paragraph four of the syllabus, certiorari denied (1989), 489 U.S. 1040, 109 S.Ct. 1177,103 L.Ed.2d 239." State v. Rios (1991), 75 Ohio App.3d 288, 291. See, also, State v.Jenks (1991), 61 Ohio St.3d 259, 273.
 {¶ 34} Whether Boukis' testimony regarding the extent of his injuries and his pain was credible when compared to the notes in his hospital record was an issue for the jury to resolve. State v. DeHass
(1967), 10 Ohio St.2d 230.
 {¶ 35} Salemi's second assignment of error is overruled.
Minimum Sentence
 {¶ 36} In his third assignment of error, Salemi argues the trial court erred by not sentencing him to the minimum sentence because he had never been incarcerated.
 {¶ 37} An appellate court can reverse or modify a sentence only if the court clearly and convincingly finds that the record does not support the sentence, or that the sentence is contrary to law. R.C. 2953.08(G). The underlying purpose of sentencing is to protect the public from future crime and to punish the offender. R.C. 2929.11.
 {¶ 38} R.C. 2929.14(B) states in pertinent part:
 {¶ 39} "[I]f the court imposing a sentence upon an offender for a felony elects or is required to impose a prison term on the offender and if the offender previously has not served a prison term, the court shall impose the shortest prison term authorized for the offense pursuant to division (A) of this section, unless the court finds on the record that the shortest prison term will demean the seriousness of the offender's conduct or will not adequately protect the public from future crime by the offender or others."
 {¶ 40} The Ohio Supreme Court in State v. Edmonson (1999),86 Ohio St.3d 324, 326, considered the requirements of this statute and held:
 {¶ 41} "We construe this statute [R.C. 2929.14(B)] to mean that unless a court imposes the shortest term authorized on a felony offender who has never served a prison term, the record of the sentencing hearing must reflect that the court found either or both of the two statutorily sanctioned reasons for exceeding the minimum term warranted the longer sentence."
 {¶ 42} R.C. 2929.14(B) does not require that the trial court give its reasons for its finding that the seriousness of the offender's conduct will be demeaned or that the public will not be adequately protected from future crimes before it can lawfully impose more than the minimum authorized sentence. By contrasting this statute with other related sentencing statutes, we deduce that the verb "finds" as used in this statute means that the court must note that it engaged in the analysis and that it varied from the minimum for at least one of the two sanctioned reasons.
 {¶ 43} A review of the transcript in the instant case reveals that the trial court found that prison was necessary because recidivism was likely if prison was not ordered. The court also found that ordering either community control sanctions or the minimum sentence would demean the seriousness of the crime and not adequately protect the public. Therefore, the trial court stated the requisite findings on the record for not imposing the minimum sentence.
 {¶ 44} In further support of the sentence, the trial court found that the physical size of the defendants when compared with the victim made the crime especially reprehensible; that the evidence indicated that Salemi changed his clothing in order to "mug this guy"; and that the victim did nothing to instigate the beating. As the court noted, the beating involved the "cold, calculated plan to track this guy down, to beat him up, to assault him, to put him in this physical condition." (TR. 978).
 {¶ 45} We find the sentence is supported by the record and the trial court's findings.
 {¶ 46} Salemi's third assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
PATRICIA ANN BLACKMON, P.J. and ANNE L. KILBANE, J. CONCUR.
[1] This case was consolidated with Case No. 81028; however, because each appeal involves a different defendant, for ease of discussion, we will address each in a separate opinion.