JOURNAL ENTRY and OPINION.
{¶ 1} Defendant-appellant Jason Fallat appeals his convictions for two counts of rape and one count of kidnapping entered after a jury trial. We find no merit to the appeal and affirm.
 {¶ 2} Fallat was indicted on four counts: two counts of rape, one count of attempted rape, and one count of kidnapping. The matter proceeded to a jury trial where the following evidence was presented.
 {¶ 3} The victim was deceased at the time of trial due to unrelated circumstances.
 {¶ 4} Jose Cruz testified that on July 16, 2000, at around 3:00 a.m., he was walking home from Denny's in the area of West 150th Street and Emery when a naked woman ran up to him "distraught," "scared," and screaming for help and told him she had been raped. He did not know what to do, but directed her to a telephone. The woman ran toward West 150th Street. As he continued walking, he looked back and saw her flag down a police car.
 {¶ 5} As Cruz headed down Emery, he saw a bald-headed man throw a bundle into the back seat of a car, get into the car, and with tires screeching, speed off with no headlights on. Cruz recognized the car as a Caprice or Impala and saw that the driver was white with a bald head. After Cruz walked home, he returned to the scene on his motorcycle. He saw the victim in the police cruiser and informed the police what he had witnessed.
 {¶ 6} Officer Brian Morehead testified that the victim flagged him down. Prior to seeing the victim, he saw a car drive by without its headlights on. The victim, who was naked, told the officers she had just been raped. According to the officer, the victim was "out of control" and "hysterical." When the officer asked who raped her, the victim pointed to the car that the officer had just seen with its lights off. The officer immediately put the victim in the back of the car and pursued the suspect's vehicle. When he pulled over Fallat's car, he noticed Fallat fumbling around in the front seat. Fearing that Fallat had a gun, the officer ordered him to show his hands. Fallat ignored the officer's order. The officer then pulled him out of the car and handcuffed him. In retrospect, the officer concluded Fallat was fumbling around in the car in an attempt to pull up his pants.
 {¶ 7} After detaining Fallat, the officer further questioned the victim. She told him that as she was walking in the vicinity of West 80th Street and Lorain Avenue, Fallat pulled up in his car and asked her if she needed a ride. The victim got into the car and after a short conversation, they decided to smoke some marijuana together. Fallat pulled the car into an industrial complex in the area of West 150th and Emery. They got out of the car and walked to a fence by the railroad tracks where they smoked a joint. According to the victim, she then got up to leave when Fallat pulled out a rope and put it around her neck. He forced her to take off her clothes and to engage in oral and vaginal sex with him. The victim also told the officer that Fallat attempted to have anal sex with her. When Fallat released her, the victim ran, naked, towards West 150th Street and attempted to wave down cars. According to the officer, Fallat admitted to sexual intercourse with the victim, but claimed it was consensual. At the scene of the rape, the officers found a condom, the victim's clothes, a ten to twelve-foot rope, hair clips, a hair band, and the victim's glasses.
 {¶ 8} Nurse Jean Hanson testified she had a "foggy" recollection of the victim. She identified her own writing on the victim's medical records and stated that the notes were taken during the ordinary course of business. Her notes indicated that the victim told her that she was raped vaginally and orally and that the attacker also attempted anal penetration. The nurse's notes indicated that the victim told her that the attacker used a rope around her neck to subdue her and that he wore a condom. The nurse noted that the victim had a "faint red mark around the neck."
 {¶ 9} Detective Strickler testified that he prepared the case to submit to the grand jury, and that Detective Wheeler did the initial investigatory work, including taking a written statement from the victim. Detective Strickler noted that Fallat is approximately six feet nine inches tall and weighs 250 pounds, while the victim was only five feet seven inches and 120 pounds. He also stated that it was very unlikely the rope found at the scene was used as a belt by the victim because it was too long.
 {¶ 10} Fallat testified on his own behalf. He admitted to having sexual intercourse with the victim, but claimed it was consensual. According to Fallat, he was at the gas station on West 150th Street and observed the victim walking up to cars and talking to people. He assumed she was a prostitute. As Fallat was leaving the station, the victim approached him and asked for a ride. Fallat believed that she was propositioning him for sex, so he agreed to give her a ride.
 {¶ 11} According to Fallat, they agreed to smoke a marijuana joint together. He drove down Emery into a parking lot where they smoked a joint. He then turned around to urinate and when he turned back around, the victim put a condom on him and performed oral sex. Fallat stated that the victim then removed a rope that she used as a belt and disrobed. At that point, Fallat told the victim he did not want to have sex with her. She then asked him for money, and when he refused to pay her, she began to scream and hit him. She then ran away screaming.
 {¶ 12} On cross-examination, Fallat could not explain why the victim took the rope all the way off her pants instead of simply loosening it. He also denied speeding away.
 {¶ 13} Based on the above evidence, the jury found Fallat guilty of two counts of rape and one count of kidnapping but not guilty of attempted rape. The trial court sentenced Fallat to four years on each count to run concurrently.
 {¶ 14} Fallat raises five assignments of error for our review.
 Speedy Trial and Preindictment Delay {¶ 15} Fallat contends in his first assignment of error that his right to a speedy trial was violated because he was not tried within 270 days, and that he was also prejudiced by the pre-indictment delay of thirteen months.
 {¶ 16} Fallat was originally arrested on July 16, 2000. After three days in jail, he was released without being charged. R.C.2945.71(C)(2) provides that a person against whom a felony charge is pending shall be brought to trial within 270 days after his arrest. This court has held on several occasions that where a defendant is arrested but released without charges being filed, the speedy trial time does not run from the time of arrest, but from the time charges are formally filed. State v. Baker, Cuyahoga App. No. 80955, 2002-Ohio-4171; State v.James (Feb. 8, 1996), Cuyahoga No. 69075; State v. Harris (Mar. 14, 1991), Cuyahoga No. 58233; State v. Bacsa (June 3, 1982), Cuyahoga No. 43997. The Ohio Supreme Court also held in Click v. Eckle (1962),174 Ohio St. 88, 91, that "the right to a speedy trial arises after one is charged with a crime." Prior to being charged with a crime, the person "is in no position to demand a speedy trial." State v. Meeker (1971),26 Ohio St.2d 9, 18.
 {¶ 17} In the instant case, although Fallat was arrested on July 16, 2000, he was released without charges being filed. It was not until August 3, 2001, that he was indicted. Therefore, the speedy trial period did not commence until August 3, 2001. As of the date of trial, January 14, 2002, only 163 days had elapsed. Because the trial date was set well within the 270-day speedy trial period, we find the trial court did not err by refusing to dismiss the case.
 {¶ 18} Fallat also argues that he was prejudiced by the pre-indictment delay. He was not indicted until thirteen months after the alleged incident. He argues that the delay was caused by the dereliction of duty by Detective Wheeler. The Ohio Supreme Court held in State v.Whiting (1998), 84 Ohio St.3d 215, 217:
 {¶ 19} "In Luck, this court used the test set forth in UnitedStates v. Marion (1971), 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468, andUnited States v. Lovasco (1977), 431 U.S. 783, 97 S.Ct. 2044,52 L.Ed.2d 752, to determine when an indictment should be dismissed due to an unreasonable preindictment delay. Luck, 15 Ohio St.3d at 153-154,157-158, 15 Ohio B. Rep. at 299, 302-303, 472 N.E.2d at 1102, 1104-1105. The Lovasco court burdened the defendant with establishing actual prejudice from the delay and charged the government with the burden of producing evidence of a justifiable reason for the delay. Accordingly,Luck requires first that the defendant produce evidence demonstrating that the delay has caused actual prejudice to his defense. Luck,15 Ohio St.3d at 157-158, 15 Ohio B. Rep. at 302-303, 472 N.E.2d at 1104-1105. Then, after the defendant has established actual prejudice, the State must produce evidence of a justifiable reason for the delay. Id. at 158, 15 Ohio B. Rep. at 303, 472 N.E.2d at 1105. `The prejudice suffered by the defendant must be viewed in light of the state's reason for the delay.' Id. at 154, 15 Ohio B. Rep. at 299, 472 N.E.2d at 1102, citingLovasco, 431 U.S. at 789-790, 97 S.Ct. at 2048-2049,52 L.Ed.2d at 758-759. This court has not disturbed the test utilized in Luck, and it is well-settled law in Ohio courts."
 {¶ 20} In the instant case, Fallat failed to show actual prejudice resulted from the thirteen-month delay. He asserted that he was prejudiced by the fact the victim was no longer alive. Although Detective Wheeler may have been negligent in failing to timely process the case, as the trial court noted, the failure to have a victim testify in a rape case was more prejudicial to the State than the defendant. Therefore, we agree with the trial court that although there was a delay, it was not prejudicial to the defendant, nor did it involve an unreasonable amount of time.
 {¶ 21} Fallat's first assignment of error is overruled.
 Questions by Jury {¶ 22} In his second assignment of error, Fallat argues that the trial court's permitting the jurors to ask questions violated his right to due process.
 {¶ 23} This court addressed this issue in State v. Smith,148 Ohio App.3d 665, 2002-Ohio-2959 and State v. Belfoure, Cuyahoga App. No. 80159, 2002-Ohio-2959. In those cases, as in the instant case, the jurors who had questions would submit them in writing to the court reporter who would hand them to the judge. The judge and counsel would then discuss the questions at sidebar to determine if they were permissible. If the questions were legally acceptable, the judge would read the questions to the witness.
 {¶ 24} The rule in this district, unless and until the Supreme Court holds differently,[1] is that "the right of a juror to question a witness during trial is within the sound discretion of the trial court."State v. Smith, supra; State v. Belfoure, supra; State v. Sheppard
(1955), 100 Ohio App. 345.
 {¶ 25} Fallat has failed to establish that he was prejudiced by the trial court's action. Accordingly, his second assignment of error is overruled.
 Ineffective Assistance of Counsel {¶ 26} In his third assignment of error, Fallat argues that counsel was ineffective for failing to object to the juror's questions.
 {¶ 27} Given our disposition of the second assignment of error, this assignment of error is moot. App.R. 12(A)(1)(c).
 Confrontation Rights Violated {¶ 28} Fallat argues in his fourth assignment of error that because the victim was deceased, he was deprived of his ability to confront and cross-examine her regarding whether the sexual relations were consensual. He also argues that the trial court erred by allowing hearsay evidence regarding the victim's oral statements, and by allowing the prosecutor to mention that the victim made a written statement, because the statement was never given to defense counsel.
 {¶ 29} In general, the admission of evidence is within the discretion of the trial court, and the court's decision will be reversed only upon a showing of an abuse of discretion. State ex rel. Elsass v.Shelby Cty. Bd. of Commrs. (2001), 92 Ohio St.3d 529, 533. "Abuse of discretion" implies that the court acted in an unreasonable, arbitrary, or unconscionable manner. State v. Herring (2002), 94 Ohio St.3d 246,255.
 {¶ 30} The trial court properly permitted Officer Morehead and Jose Cruz to testify to what the victim told them because at the time the victim made the statements, she was excited and according to the testifying witnesses, "hysterical" and "distraught." Therefore, the statements she made to the officer and Cruz fall within the excited utterance exception pursuant to Evid.R. 803(2). Defense counsel was permitted to thoroughly cross-examine the witnesses regarding these statements.
 {¶ 31} We also find the trial court did not abuse its discretion by permitting Nurse Hanson to testify to her notes contained in the victim's medical records. Hanson testified that the notes reflected that the victim informed her she was raped vaginally and orally, and that the attacker attempted to anally rape her. She also stated that a rope was placed around the victim's neck and that the attacker wore a condom. Because these statements were made for the purpose of medical diagnosis and treatment, they were admissible pursuant to Evid.R. 803(4). Hanson's note detailing a "faint red mark around the neck" of the victim was based on the nurse's own observation. Because she testified and was fully cross-examined by defense counsel, it does not constitute hearsay.
 {¶ 32} Finally, although the court permitted the State to mention during closing argument that the victim had given a written statement, we find no error. The contents of the statement were not disclosed, nor was the statement admitted into evidence. Furthermore, Detective Strickler testified on direct examination that the victim made a written statement. Therefore, no prejudice resulted from the prosecutor's mentioning that the victim made a written statement.
 {¶ 33} Fallat's fourth assignment of error is overruled.
 Manifest Weight of the Evidence {¶ 34} In his fifth assignment of error, Fallat argues that his convictions for two counts of rape and one count of kidnapping were against the manifest weight of the evidence.
 {¶ 35} When the argument is made that the conviction is against the manifest weight of the evidence, the appellate court is obliged to consider the weight of the evidence, not its mere legal sufficiency. The defendant has a heavy burden in overcoming the fact finder's verdict. As this court has stated:
 {¶ 36} "The weight to be given evidence and the credibility of witnesses are determinations to be made by the triers of fact. State v.Thomas (1982), 70 Ohio St.2d 79, 24 O.O.3d 150, 434 N.E.2d 1356. If there was sufficient evidence for the triers of fact to find defendant guilty beyond a reasonable doubt this court will not reverse a guilty verdict based on manifest weight of the evidence. State v. Brown (1988),38 Ohio St.3d 305, 528 N.E.2d 523, paragraph four of the syllabus, certiorari denied (1989), 489 U.S. 1040, 109 S.Ct. 1177,103 L.Ed.2d 239." State v. Rios (1991), 75 Ohio App.3d 288, 291. See, also, State v.Jenks (1991), 61 Ohio St.3d 259, 273.
 {¶ 37} In the instant case, the victim's medical record and the victim's statements to Officer Morehead and Jose Cruz, provided sufficient evidence of Fallat's guilt to support his convictions. The victim told both the officer and Nurse Hanson that the attacker put a rope around her neck and forced her to perform oral sex and to engage in vaginal intercourse. The nurse's notes also indicate that she observed a faint red mark around the victim's neck. The victim identified Fallat's vehicle as her assailant's. Since it is well settled that circumstantial evidence possesses the same probative value as direct evidence, this evidence supported the convictions. State v. Jenks (1991),61 Ohio St.3d 259, paragraph one of syllabus.
 {¶ 38} Fallat's fifth assignment of error is overruled.
 {¶ 39} Judgment is affirmed.
It is ordered that appellee recover of appellant the costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
KENNETH A. ROCCO, A.J. and MICHAEL J. CORRIGAN, J. CONCUR.
[1] As this court recognized in Smith and Belfoure, a conflict exists among the districts in Ohio and the issue is currently pending before the Ohio Supreme Court in State v. Fisher (2002), 94 Ohio St.3d 1484,763 N.E.2d 1183.