JOURNAL ENTRY and OPINION.
{¶ 1} Defendant-appellant Donald McMahan appeals his convictions for receiving stolen property, fraudulent actions concerning a vehicle identification number, and possession of criminal tools. We find no merit to the appeal and affirm.
 {¶ 2} The following evidence was presented during McMahan's jury trial.
 {¶ 3} Harry Staple testified that he was a truck driver, and in May 2001, his friend Bob Clawges told him about a truck trailer for sale. He and Clawges went to McMahan's scrapyard where the trailer was located. Although Staple did not speak with McMahan, Steve Yendriga, McMahan's mechanic, told Staple that McMahan wanted $700 for the trailer. Yendriga also told him that McMahan had informed him that someone had already bid on the trailer and that McMahan would sell the trailer to whomever paid first. Staple testified that because of these conversations, he understood that McMahan was the seller.
 {¶ 4} Staple then inspected the trailer and, because of the unique location of the air gauge, recognized it as belonging to All State Freight.
 {¶ 5} Staple thought the $700 price was low so he called the former owner at All State Freight to inquire why he sold the trailer. The owner told him that the trailer had been stolen. Staple testified that shortly thereafter, Det. Sowa called him to ask for information regarding the stolen trailer. Several days later, the detective asked Staple to go back to McMahan's lot and ask about the trailer. When Staple did so, he was informed by Yendriga that McMahan did not want anything to do with the trailer and that he was going to remove it from the lot.
 {¶ 6} Steve Yendriga testified that he was a mechanic for McMahan and that McMahan had instructed him to put a new metal bed on the trailer. McMahan then told him not to put on the new bed because he decided he could not use the trailer. Yendriga did not know how long the trailer had been on the lot because he had just started working for McMahan. McMahan ordered him to "dump" the trailer because he was not sure of its origin.
 {¶ 7} On cross-examination, Yendriga testified that the trailer was originally located near an area on McMahan's lot which was leased to a man named Oscar. He also stated that another person had offered $700 prior to Staple's looking at the trailer and that McMahan had told him that whomever paid first would get the trailer.
 {¶ 8} William Lang testified that he was an investigator for the National Insurance Crime Bureau. He and Det. Sowa drove by the trailer several times and took photos from the detective's undercover vehicle. During the final drive-by, he saw McMahan watching them.
 {¶ 9} Det. Sowa testified that he worked for the auto theft division of the Cleveland Police Department. He received an anonymous call on May 21, 2001, which directed him to call Harry Staple regarding the stolen trailer. He called Staple and later that afternoon he went with Lang to photograph the trailer. He also thought McMahan had seen them taking the photos. Later that night, Sowa went to see if the trailer was still there and discovered that it had been moved off the lot and onto the street around the corner. The vehicle identification plate on the trailer was missing.
 {¶ 10} The next morning, Det. Sowa called Staple and asked him to inquire about the trailer. Staple told the detective that Yendriga informed him that the vehicle was not for sale and that McMahan wanted nothing to do with it. At that point, Sowa had the trailer impounded. The missing vehicle identification plate was found and the number was traced to a reported stolen trailer.
 {¶ 11} Thomas Benson testified on behalf of the defense and stated that he leased space on McMahan's lot. He remembered that a man named Oscar also rented space but left and abandoned all his scrap.
 {¶ 12} McMahan testified that he managed a wrecking yard and bought scrap from trucks. Twenty different vendors rented space from him to conduct various scrap and auto repair businesses. McMahan claimed that he rented space to a man named Oscar who abandoned the trailer when he discontinued his business. McMahan denied attempting to sell the trailer. He stated that the trailer had no value because of its condition. However, he admitted that Yendriga told him that the police were inquiring about the trailer and that he instructed Yendriga to move it off his property. McMahan also claimed his truck was never attached to the trailer, but a photo contradicted this. McMahan also denied being at the yard the day the detectives took photos because his brother died the day before and he was making funeral arrangements.
 {¶ 13} The jury found McMahan guilty of all three charges and also found the property was valued at not less than $500 and not more than $5,000. The trial court sentenced him to nine months in prison for each count, to run concurrently, fined him $2,500, and ordered him to pay restitution in the amount of $700.
 {¶ 14} McMahan appeals and raises one assignment of error.
 {¶ 15} In his sole assignment of error, McMahan argues that his convictions are against the manifest weight of the evidence. He contends that the key witness against him, Steve Yendriga, was not credible because of a prior conviction and because he gave conflicting testimony regarding McMahan's knowledge of the trailer. McMahan also argues that it was not logical that a man selling his business would put that business at risk by selling a decrepit, stolen sixteen-year-old trailer that, according to Staple, was not worth $700. Finally, McMahan argues that he was not on the property at the time of the offenses because of his brother's death, and because he had no knowledge of the vehicle, he could not have known about the missing vehicle identification number.
 {¶ 16} When the argument is made that the conviction is against the manifest weight of the evidence, the appellate court is obliged to consider the weight of the evidence, not its mere legal sufficiency. The defendant has a heavy burden in overcoming the fact finder's verdict. As this court has stated:
 {¶ 17} "The weight to be given evidence and the credibility of witnesses are determinations to be made by the triers of fact. State v.Thomas (1982), 70 Ohio St.2d 79, 24 O.O.3d 150, 434 N.E.2d 1356. If there was sufficient evidence for the triers of fact to find defendant guilty beyond a reasonable doubt this court will not reverse a guilty verdict based on manifest weight of the evidence. State v. Brown (1988),38 Ohio St.3d 305, 528 N.E.2d 523, paragraph four of the syllabus, certiorari denied (1989), 489 U.S. 1040, 109 S.Ct. 1177,103 L.Ed.2d 239." State v. Rios (1991), 75 Ohio App.3d 288, 291. See, also, State v.Jenks (1991), 61 Ohio St.3d 259, 273.
 {¶ 18} Although McMahan argues that Yendriga was not credible, credibility of witnesses is a matter for the jury to decide. State v.DeHass (1967), 10 Ohio St.2d 230. The jury was apprised of Yendriga's prior conviction and also heard his testimony. Therefore, it was up to the jury to resolve any inconsistencies in Yendriga's testimony.
 {¶ 19} McMahan also argues that it is not logical that he would risk the business he was trying to sell by attempting to sell a decrepit, stolen trailer. However, it is just as likely that he sought to rid his property of any stolen goods before selling the business.
 {¶ 20} Finally, there was sufficient evidence that McMahan was aware of the stolen trailer and was attempting to sell it and also that the trailer was worth at least $700. Staple testified that Yendriga told him that McMahan was asking $700 for the trailer, that another bid was made on the trailer, and that McMahan had told him that whomever paid first, would get the trailer. According to Staple, he thought the $700 price was unusually low. The detective testified that McMahan saw them taking photos of the trailer and, a mere ten hours later, it had been removed from the property and abandoned around the corner. Upon inspecting the trailer, the detective discovered that the trailer's vehicle identification plate was clearly missing. The vehicle identification number revealed that the trailer was stolen.
 {¶ 21} Accordingly, the jury had sufficient evidence on which to base McMahan's convictions.
 {¶ 22} McMahan's assignment of error is overruled.
 {¶ 23} Judgment is affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
PATRICIA ANN BLACKMON, P.J. and ANNE L. KILBANE, J. concur.