JOURNAL ENTRY and OPINION
{¶ 1} Defendant-appellant Clint Welsh appeals his conviction for felonious assault entered after a jury trial. We find no merit to the appeal and affirm.
 {¶ 2} Welsh and co-defendant, Pietro Salemi, were each indicted for one count of felonious assault.[1] The following evidence was presented at their jury trial:
 {¶ 3} The victim, Steven Boukis, and his friend John Grilles testified that on October 4, 2001, they were at a bar called Mercury, located on West Sixth Street in Cleveland. The men were seated at the end of the bar, when Pietro Salemi, Clint Welsh, and a third man with "dirty blond" hair and heavily tattooed arms, approached Boukis. Boukis was familiar with the men because he saw them often at the bars he frequented. However, he knew only Welsh and Salemi's first names.
 {¶ 4} According to Boukis, the men asked him about his relationship with a woman named Nikki Monday, with whom Boukis had gone out a few times. Apparently, the woman was also dating Salemi. Boukis told Salemi that he could "have her" and that he did not want any problems.
 {¶ 5} Boukis testified that several days before this confrontation, Salemi had confronted him at another bar regarding the woman. At that time, Boukis told Salemi that he could "have her" because he "was not that desperate."
 {¶ 6} Grilles testified that after Boukis had conversed with the men for several minutes, he began to fear for his and Boukis' safety and told Boukis, "Let's go." They left the bar and walked to Boukis' vehicle. As they were getting in, they saw Welsh, Salemi, and the man with the tattoos enter a black Lincoln Navigator. Fearful that the men were going to follow them, Boukis wrote down the license plate number. The men, however, did not follow.
 {¶ 7} On their way home, Boukis received a telephone call inviting him to a party at the downtown apartment of a friend named Jennifer Rose. He and Grilles returned downtown and joined the party which included several people, one of whom was named Willie Armstead.
 {¶ 8} Around 5:00 a.m., Boukis and Grilles left the party, and as they walked to Boukis' vehicle, Salemi came around the corner of the building and punched Boukis in the side of the face. According to Grilles, Salemi then threw Boukis face-down onto the pavement, sat on his back, and began punching him on both sides of the face. Grilles noticed that Salemi had changed his clothes and was wearing a black sweater, sweat pants, and a winter hat.
 {¶ 9} Grilles attempted to get back into the apartment building, but the doors were locked. He returned in an attempt to help Boukis, but Welsh told him, "Stay out of it." Fearing he would be next, Grilles hid behind a concrete barrier and called 911. He stayed in hiding until Boukis stopped screaming. Grilles then saw both Salemi and Welsh run off.
 {¶ 10} According to Boukis, while Salemi was beating him, he was yelling, "You want to lie to me, bitch? Want to fuck with me bitch?" He estimated he was punched in the head by Salemi twenty to thirty times. He also stated that he was kicked several times in the head by someone wearing cowboy boots. The last thing he remembered was the boot kicking his head. He then lost consciousness. Both Boukis and Grilles testified that Welsh was wearing cowboy boots that night.
 {¶ 11} After Salemi and Welsh left, Grilles picked up a semi-conscious Boukis and carried him to his vehicle. Grilles testified that Boukis' cheeks were red and bruised and he had a huge gash on his head. Grilles flagged down a patrol car, and the officer escorted them to Lutheran Hospital.
 {¶ 12} According to Boukis, he suffered from headaches and "tingling" for "countless days" after the assault. He testified that he has herniated discs and minor nerve damage to his forehead. Boukis stated that he goes to therapy three times per week for his back pain, takes numerous drugs for the pain, and will require surgery to straighten the discs.
 {¶ 13} Jennifer Rose testified that she did not hear about the assault until several days later. She stated that both Boukis and Grilles were at her apartment prior to the assault, and that Willie Armstead was also present.
 {¶ 14} Detective Zenkewicz investigated the case. He was suspicious of how Salemi and Welsh knew where Boukis and Grilles were, so he subpoenaed the cell phone records of the people who attended Jennifer Rose's party. He also traced the license plate that Boukis provided, to Linda Welsh, Clint Welsh's mother.
 {¶ 15} According to Penny Burlingson of Verizon Wireless, a review of Willie Armstead's cell phone records indicated that he placed a call to Salemi's cell phone on October 5 at approximately 4:57 a.m. She stated that Salemi's cell phone records indicated heavy activity on October 5 between the hours of 2:00 a.m. and 5:00 a.m., and that Salemi called Armstead's cell phone at 4:54 a.m.
 {¶ 16} Scott and Gina Savoca, both friends of Salemi, claimed that Salemi was with Scott Savoca that night. They went to a local bar to celebrate Salemi's upcoming birthday, then returned to Savoca's home. Salemi's father contended that Salemi slept at home that night and that they both went out to breakfast at around 5:00 a.m.
 {¶ 17} Matt Paniguitti testified that he went with Clint Welsh to a bar called the Groovy Little Café at around midnight. They left around 1:00 a.m. Because Welsh was too drunk to drive home, Paniguitti drove him back to his house, where Welsh spent the night.
 {¶ 18} Based on the above evidence, the jury found both men guilty of felonious assault. Both Salemi and Welsh were sentenced to four-year prison terms.
 {¶ 19} Welsh raises six assignments of error on appeal.
Conflict of Interest Between Counsel
 {¶ 20} In his first assignment of error, Welsh contends that the trial court knew or should have known of a possible conflict of interest posed by two attorneys from the same law firm representing him and Salemi, and therefore, the trial court had a duty to inquire into the possible conflict.
 {¶ 21} "Where a trial court knows or reasonably should know of an attorney's possible conflict of interest in the representation of a person charged with a crime, the trial court has an affirmative duty to inquire whether a conflict of interest actually exists. * * * Where a trial court breaches its affirmative duty to inquire, a criminal defendant's rights to counsel and to a fair trial are impermissibly imperiled and prejudice or `adverse effect' will be presumed." State v.Gillard (1992), 64 Ohio St.3d 304, 311-312, citing Holloway v. Arkansas
(1978), 435 U.S. 475.
 {¶ 22} In the absence of special circumstances, however, it is reasonable for the trial court to assume that multiple representation entails no conflict or that the lawyer and his clients knowingly accepted such risk of conflict as may be inherent in such a representation. Statev. Manross (1988), 40 Ohio St.3d 180, 182. Thus, a trial court does not have an affirmative duty in every case involving multiple representation to conduct an inquiry into the possibility that a conflict of interest exists.
 {¶ 23} Nothing in the circumstances of this case indicates that the trial court had an affirmative duty to inquire whether the dual representation by attorneys from the same firm presented a conflict of interest. First, neither Welsh nor Salemi objected to the multiple representation. Second, "there is no conflict [of interest] where the two defenses did not result in one [defendant] assigning blame to the other and where both defendants had a common interest in attacking the credibility of the prosecution witnesses." Manross, supra, at 182, citingKaplan v. Bombard (C.A.2, 1978), 573 F.2d 708. Here, the defenses presented by Welsh and Salemi were not in conflict. Both had alibi witnesses providing separate alibis for each of them.
 {¶ 24} Accordingly, the trial court did not have an affirmative duty, under the circumstances of this case, to inquire into the possibility of a conflict of interest.
 {¶ 25} Welsh's first assignment of error is therefore overruled.
Ineffective Assistance of Counsel
 {¶ 26} In his second assignment of error, Welsh claims that because of the alleged conflict of interest, his counsel ineffectively represented him.
 {¶ 27} This court reviews a claim of ineffective assistance of counsel under the two-part test set forth in Strickland v. Washington
(1984), 466 U.S. 668. Under Strickland, a reviewing court will not deem counsel's performance ineffective unless a defendant can show his lawyer's performance fell below an objective standard of reasonable representation and that prejudice arose from the lawyer's deficient performance. State v. Bradley (1989), 42 Ohio St.3d 136, paragraph one of syllabus. To show prejudice, a defendant must prove that, but for his lawyer's errors, a reasonable probability exists that the result of the proceedings would have been different. Id. at paragraph two of syllabus. Judicial scrutiny of a lawyer's performance must be highly deferential.State v. Sallie (1998), 81 Ohio St.3d 673, 674.
 {¶ 28} In the instant case, Welsh cannot prove any actual prejudice resulted from the dual representation. As stated above, this was not a case where the two defendants were trying to assign blame to the other. Welsh's suggestion that he could have blamed Salemi based on a statement Salemi made after the trial was concluded and the case was being appealed, is mere speculation. Because an "actual" conflict did not exist at trial, Welsh cannot prove that counsel's performance was adversely affected. State v. Keith (1997), 79 Ohio St.3d 514, 535.
 {¶ 29} Welsh's second assignment of error is overruled.
Sufficiency and Manifest Weight of the Evidence
 {¶ 30} In his third and fourth assignments of error, Welsh argues that the witnesses never testified to seeing Welsh "knowingly cause serious physical harm" to Boukis.
 {¶ 31} The standard of review with regard to the sufficiency of evidence is set forth in State v. Bridgeman (1978), 55 Ohio St.2d 261, syllabus:
 {¶ 32} "Pursuant to Criminal Rule 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt." See, also, Statev. Apanovitch (1987), 33 Ohio St.3d 19, 23; State v. Davis (1988),49 Ohio App.3d 109, 113. Bridgeman must be interpreted in light of the sufficiency test outlined in State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus, in which the Ohio Supreme Court held:
 {¶ 33} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence submitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. (Jackson v. Virginia [1979],443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, followed.)"
 {¶ 34} When the argument is made that the conviction is against the manifest weight of the evidence, the appellate court is obliged to consider the weight of the evidence, not its mere legal sufficiency. The defendant has a heavy burden in overcoming the fact finder's verdict. As this court has stated:
 {¶ 35} "The weight to be given evidence and the credibility of witnesses are determinations to be made by the triers of fact. State v.Thomas (1982), 70 Ohio St.2d 79, 24 O.O.3d 150, 434 N.E.2d 1356. If there was sufficient evidence for the triers of fact to find defendant guilty beyond a reasonable doubt this court will not reverse a guilty verdict based on manifest weight of the evidence. State v. Brown (1988),38 Ohio St.3d 305, 528 N.E.2d 523, paragraph four of the syllabus, certiorari denied (1989), 489 U.S. 1040, 109 S.Ct. 1177,103 L.Ed.2d 239." State v. Rios (1991), 75 Ohio App.3d 288, 291. See, also, State v.Jenks (1991), 61 Ohio St.3d 259, 273.
 {¶ 36} Grilles testified that he did not see Welsh kick Boukis. However, he testified that during part of the time that Boukis was being beaten, he tried to get back inside the apartment building and also hid behind a concrete barrier. Therefore, he did not witness the entire assault. He testified that Welsh was present during the beating and that Welsh was wearing cowboy boots that night.
 {¶ 37} Boukis testified that he recalled being on the ground and someone wearing cowboy boots kicked him in the head several times, with the last kick rendering him unconscious. He testified that he noticed that Welsh was wearing cowboy boots earlier that night.
 {¶ 38} The testimony of both of these men was sufficient to find that Welsh kicked Boukis in the head. Circumstantial evidence was sufficient to show that Welsh kicked Boukis. Welsh was present during the beating; he was wearing cowboy boots; and Boukis recalled being kicked in the head by someone wearing cowboy boots.
 {¶ 39} Whether this testimony was credible, was within the discretion of the jury. State v. DeHass (1967), 10 Ohio St.2d 230.
 {¶ 40} Welsh's third and fourth assignments of error are overruled.
Jury Instruction on Assault
 {¶ 41} In his fifth assignment of error, Welsh argues that the trial court erred by failing to instruct the jury on the lesser included offense of assault because there was no evidence of serious physical harm.
 {¶ 42} In State v. Davis (1983), 6 Ohio St.3d 91, 95, the Ohio Supreme Court held:
 {¶ 43} "* * * merely because one offense can be a lesser included offense of another does not mean that a court must always instruct on both offenses where the greater offense is charged. * * * The persuasiveness of the evidence regarding the lesser included offense is irrelevant. If under any reasonable view of the evidence it is possible for the trier of fact to find the defendant not guilty of the greater offense and guilty of the lesser offense, the instruction on the lesser included offense must be given. The evidence must be considered in the light most favorable to defendant."
 {¶ 44} "Serious physical harm" is defined by R.C. 2901.01(A)(5) as follows:
 {¶ 45} "(5) `Serious physical harm to persons' means any of the following:
 {¶ 46} "* * *
 {¶ 47} "(c) Any physical harm which involves some permanent incapacity, whether partial or total, or which involves some temporary, substantial incapacity.
 {¶ 48} "(d) Any physical harm which involves some permanent disfigurement, or which involves some temporary, serious disfigurement.
 {¶ 49} "(e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain."
 {¶ 50} Boukis testified that he lost consciousness upon being kicked by the person wearing cowboy boots. His eyes were swollen shut, he suffered from headaches and tingling sensation days after the assault, and had chronic backache due to the herniated discs. He still takes medication for the pain he suffers and will require surgery to repair the injury to his back. Given the amount of evidence regarding the seriousness of Boukis' injuries, the trial court did not err in refusing to instruct the jury on assault.
 {¶ 51} Welsh's fifth assignment of error is overruled.
Minimum Sentence
 {¶ 52} In his sixth assignment of error, Welsh argues the trial court erred by not sentencing him to the minimum sentence because he had never been incarcerated.
 {¶ 53} An appellate court can reverse or modify a sentence only if the court clearly and convincingly finds that the record does not support the sentence, or that the sentence is contrary to law. R.C. 2953.08(G). The underlying purpose of sentencing is to protect the public from future crime and to punish the offender. R.C. 2929.11.
 {¶ 54} R.C. 2929.14(B) states in pertinent part:
 {¶ 55} "[I]f the court imposing a sentence upon an offender for a felony elects or is required to impose a prison term on the offender and if the offender previously has not served a prison term, the court shall impose the shortest prison term authorized for the offense pursuant to division (A) of this section, unless the court finds on the record that the shortest prison term will demean the seriousness of the offender's conduct or will not adequately protect the public from future crime by the offender or others."
 {¶ 56} The Ohio Supreme Court in State v. Edmonson (1999),86 Ohio St.3d 324, 326, considered the requirements of this statute and held:
 {¶ 57} "We construe this statute [R.C. 2929.14(B)] to mean that unless a court imposes the shortest term authorized on a felony offender who has never served a prison term, the record of the sentencing hearing must reflect that the court found either or both of the two statutorily sanctioned reasons for exceeding the minimum term warranted the longer sentence."
 {¶ 58} R.C. 2929.14(B) does not require that the trial court give its reasons for its finding that the seriousness of the offender's conduct will be demeaned or that the public will not be adequately protected from future crimes before it can lawfully impose more than the minimum authorized sentence. By contrasting this statute with other related sentencing statutes, we deduce that the verb "finds" as used in this statute means that the court must note that it engaged in the analysis and that it varied from the minimum for at least one of the two sanctioned reasons.
 {¶ 59} A review of the transcript in the instant case reveals that the trial court found that Welsh's kicking Boukis in the head with his boots caused more harm than the punches, and that given the physical size of Welsh compared with Boukis, he could have killed Boukis. The court also found the beating was not instigated by the victim.
 {¶ 60} Based on these facts, the court found that prison was necessary because recidivism was likely if prison was not ordered. The court also found that ordering either community control sanctions or the minimum sentence would demean the seriousness of the crime and not adequately protect the public.
 {¶ 61} We find the sentence is supported by the record and the trial court's findings.
 {¶ 62} Welsh's sixth assignment of error is overruled.
Judgment is affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
PATRICIA ANN BLACKMON, P.J. and ANNE L. KILBANE, J. CONCUR.
[1] This case was consolidated with Case No. 81091; however, because each appeal involves a different defendant, for ease of discussion, we will address each in a separate opinion.