JOURNAL ENTRY and OPINION.
{¶ 1} Defendant-appellant Dominic A. Minnillo ("Minnillo"; d.o.b. July 2, 1964) appeals from his jury trial conviction of driving under the influence of alcohol ("DUI") in violation of R.C. 4511.191(A)(1). For the reasons adduced below, we affirm.
 {¶ 2} A review of the record indicates that on January 23, 2001, at approximately 5:53 p.m., Minnillo, a resident of Cleveland Heights, Ohio, was operating his 1989 Chevrolet Berretta coupe in the southbound lanes of I-71 between the interstate exits for Ohio Route 82 (a.k.a. Royalton Road) and I-80 (a.k.a. the Ohio Turnpike) in the City of Strongsville, Ohio when his vehicle was involved in a multiple car accident. At that time Minnillo was cited by Strongsville Police Patrolman Chris Holloway with DUI (see R.C. 4511.19[A][1]), lack of using his safety belt (see Strongsville Codified Ordinance 438.29), and a continuous lanes violation (see Strongsville Codified Ordinance 432.08). The pavement was dry without adverse weather and the traffic was heavy. The visibility was marked as "dusk" on the Ohio Uniform Traffic Citation issued to Minnillo.
 {¶ 3} On May 8, 2001 Minnillo filed a motion to suppress evidence seized from, and statements made by, Minnillo. The basis of this motion was that: (1) the police lacked reasonable suspicion of a crime to stop Minnillo, and lacked probable cause to arrest Minnillo; and, (2) the police violated Minnillo's right against self-incrimination and obtained statements in violation of his Miranda rights.
 {¶ 4} The trial court conducted an oral hearing on September 7, 2001 on the motion to suppress. At this hearing the prosecution presented the testimony of three witnesses.
 {¶ 5} The first witness for the prosecution at the motion hearing was Strongsville Police Patrolman Phillip Siwik, who began by testifying that he had been a patrolman in Strongsville for two years at the time of the hearing. Siwik, who was on basic patrol at the time of the accident, was dispatched to the scene of the multiple car accident and was advised that there were injuries on the scene. Siwik was the first officer on the scene of the three-car crash site and began attending to the injured. One of the vehicles was a van, resting in the median, with heavy damage. Minnillo's vehicle was also heavily damaged with its entire top peeled open. Another vehicle was parked nearby.
 {¶ 6} Siwik testified that his attention was drawn to Minnillo because Minnillo was the only victim with visible injuries, leaning up against a concrete barrier wall, bleeding heavily and yelling for a baby. Siwik went over to Minnillo and told him to stay down, physically restraining Minnillo from getting up. From a distance of a two to three feet Siwik could smell on Minnillo's breath the "strong odor of alcohol coming from him." Tr. 9, 24-25. One of the other witnesses, whose car was behind Minnillo's, had informed Siwik that she had observed Minnillo being ejected from his vehicle during the crash. According to Siwik, Minnillo first claimed that there was a baby passenger. After searching the Minnillo vehicle for a baby Minnillo then claimed that the baby's picture was in his (Minnillo's) wallet. Siwik did not search the wallet. At that point Minnillo was transported to the hospital. Siwik claimed that from outside Minnillo's vehicle, he observed therein a full bottle of beer, an open can of beer, shot glasses in the back, and various cleaning instruments used by bar owners. Based on the odor of alcohol, the accident, and Minnillo's glossy eyes, Siwik believed there was probable cause to arrest for a driving under the influence violation. Tr. 13-14, 20.
 {¶ 7} According to the accident report prepared by Siwik, Minnillo was ejected from his vehicle and traveled in the air for approximately 30 to 40 feet.
 {¶ 8} The second witness for the prosecution at the motion hearing was Strongsville Police Patrolman Michael Gominey, who began by testifying that he had been a patrolman in Strongsville for a year-and-a-half at the time of the hearing. Gominey was assigned to assist other officers at the accident scene in documenting the site. As part of this effort Gominey photographed a capped full bottle of beer which was observed on the driver's side front floor board of Minnillo's vehicle, and an empty twelve ounce can of beer observed on the passenger side front floor board of Minnillo's vehicle. These photographs were authenticated at the hearing by Gominey. Gominey also heard someone saying at the scene that Minnillo had said there's a baby.
 {¶ 9} The third witness for the prosecution at the motion hearing was Strongsville Police Patrolman Albert Heyse, who began by testifying that he had been a patrolman in Strongsville for fourteen years at the time of the hearing. Heyse further testified that he was dispatched to visit Minnillo on January 23, 2001, at approximately 6:00 p.m., at the hospital emergency room where Minnillo had been taken. While visiting Minnillo, Heyse was accompanied by Strongsville Police Patrolman Chris Holloway. Prior to the police approaching Heyse could observe Minnillo acting socially with hospital staff. The police then approached Minnillo and as Holloway began reading the implied consent form on the back of the ALS form, which form advised Minnillo that he was now under arrest for operating a motor vehicle while under the influence of alcohol, Heyse observed Minnillo begin to get "wildly angry" and shout at Holloway. Tr. 35-36. Heyse could not recall what Minnillo had said during this outburst. Tr. 37. Heyse smelled the odor of alcohol coming from Minnillo's breath, and noticed that Minnillo's eyes were red, glassy, blood-shot, with a sleepy appearance. Heyse considered this one of the clues that Minnillo may have been drinking. Tr. 44. The police did not inquire of Minnillo when it was that he had last slept. Minnillo then calmed down upon the request of Heyse, and permitted Holloway to complete the reading of the consent form. At the conclusion of this reading, Heyse heard Minnillo ask to speak to an attorney. Tr. 36. At that point the officers left Minnillo and went to another area of the emergency room to begin preparing the DUI report. Based on the appearance of his eyes and the odor of alcohol on his breath the decision was made to place Minnillo under arrest for driving under the influence. Tr. 45.
 {¶ 10} The hearing then concluded and the court took the matter under advisement. On September 21, 2001 the trial court denied the motion to suppress in its entirety specifically finding that the police had probable cause to detain and arrest Minnillo and that Minnillo was provided all constitutional protections.
 {¶ 11} The jury trial commenced on January 10, 2002. Upon the motion of the defense, the court bifurcated trial on the charges, allowing the jury to consider the DUI offense and the trial court to determine guilt on the remaining charges. Four witnesses testified at the trial.
 {¶ 12} The first trial witness for the prosecution was Ms. Michelle Klinger, a Police and Fire dispatcher for the City of Strongsville who observed the multiple car accident involving Minnillo's vehicle while on her way to work. The traffic was heavy. As she was heading southbound on I-71 in the right curb lane she observed the vehicle in front of hers, Minnillo's vehicle, cross over the center line of the then two-lane highway three times before Minnillo took corrective action to return his car to the right lane. After the third time, Klinger observed Minnillo look over to his right and reach down for something. As he did so, Klinger observed Minnillo's car go onto the right hand shoulder of the road. Minnillo looked up and turned the car to the left in an attempt to get back onto the highway. Minnillo's car then hit an orange construction barrel and a concrete construction barrier, ripping open the right side of the car and causing the car to spin out of control, spewing debris across the highway. The gasoline tank ruptured and ignited. The Minnillo vehicle then struck a van that was in the passing lane in front of Klinger's vehicle and Minnillo was ejected from his vehicle, landing over and past the concrete construction barrier. Minnillo's spinning car then came to a stop near the concrete construction barrier. Klinger's vehicle stopped within a few feet of Minnillo's vehicle. Klinger, upset and claiming to have experienced some injuries while evading the accident developing before her, stayed in her vehicle.
 {¶ 13} With traffic on the highway stopped due to the accident Klinger then called the Strongsville Police Department for help using her cellular telephone. She heard someone yelling for their baby and observed a number of people scurrying around looking for a missing baby. She did not know if a baby was ever located. The police arrived on the scene, approximately one quarter of a mile north of Royalton Road, within several minutes of her call.
 {¶ 14} The second trial witness for the prosecution was Patrolman Gominey, who generally reiterated his testimony from the motion hearing. Gominey added that, in addition to having spoken with Klinger at the scene, the full bottle of beer observed in Minnillo's vehicle was a Miller Genuine Draft, and the empty beer can was a Budweiser. On Gominey's cross-examination it was brought out that Minnillo was a licensed beer tap coil cleaner; one of the job duties of such a cleaner is to taste test a small amount of the beer after cleaning a particular tap so as to ensure the coil has been cleaned properly. The defense was apparently attempting to infer that any smell of alcohol on Minnillo's breath was due to his testing procedures and was not evidence of intoxication. Gominey also testified that he was not involved in the arrest of Minnillo or the treating of the injured.
 {¶ 15} The third trial witness for the prosecution was Patrolman Siwik, who generally reiterated his testimony from the motion hearing. Siwik added that Minnillo screamed for his baby for at least twenty seconds, which prompted Siwik to look in Minnillo's car. Tr. 114-115. Siwik also spoke with Klinger at the scene, who told the officer what she had observed leading up to the accident.
 {¶ 16} The fourth, and final, trial witness for the prosecution was Patrolman Holloway, who began by testifying that he has been employed by Strongsville for approximately eighteen months. It was Holloway who arrested Minnillo at the hospital, issuing him a citation.
 {¶ 17} Holloway, prior to the arrest, had been at the crash scene, but Minnillo had already been transported by ambulance to the hospital by the time Holloway arrived. Holloway was instructed by his superior to go to the hospital and perform a DUI investigation. Upon arriving at the hospital Holloway spoke with the nursing staff and then went to Minnillo's bedside. From a distance of three to four feet, Holloway asked Minnillo about the crash; Holloway immediately noticed the "very strong" odor of alcohol coming from Minnillo's breath and Minnillo's blood-shot eyes. Tr. 136. Holloway was certain that the smell of alcohol did not emanate from hospital equipment or Minnillo's clothing. Tr. 137. Every time Holloway asked for details about the accident Minnillo inappropriately replied to just look in his wallet, not responding to the questions. Tr. 137. Holloway did not inspect the contents of Minnillo's wallet, but instead left the room to confer with Patrolman Heyse, who had accompanied Holloway at all times at the hospital. The officers made the decision to arrest Minnillo and proceed accordingly, reading Minnillo the advised consent form. Upon reading the consent form to Minnillo, Minnillo informed Holloway that he was not going to submit to any testing for the presence of alcohol. Up to that point Minnillo's demeanor was indifferent. When told that he was going to be cited for driving under the influence, Minnillo became very angry and directed profanities at the officers, calling them "motherfuckers." Tr. 143.
 {¶ 18} According to Holloway, the glassy, blood-shot eyes and the strong odor of alcohol on one's breath indicates that the subject is under the influence of alcohol. Tr. 144.
 {¶ 19} The officers then left the room to help calm the situation and, after a few minutes of listening to Minnillo continue his yelling, Minnillo returned to a non-agitated state. While outside the room the officers prepared the traffic citation in issue. They returned a short time later and issued the citation to Minnillo.
 {¶ 20} At the close of the prosecution's case in chief the defense made a cursory and unsupported motion for acquittal pursuant to Crim.R. 29. The trial court summarily denied this motion. Tr. 160.
 {¶ 21} The defense then rested its case without putting on any evidence and renewed its motion for acquittal. Tr. 161. The court then heard closing arguments by the parties and proceeded to instruct the jury on its duties. When asked, the defense raised no problems with the jury instructions. Tr. 196. The jury then retired to deliberate the case.
 {¶ 22} The jury returned its unanimous verdict of guilty on January 10, 2002, on the DUI offense and the court referred Minnillo for the preparation of a presentence investigation report.
 {¶ 23} The court subsequently sentenced Minnillo on February 20, 2002, and stayed the sentence on the condition that a notice of appeal be filed. Minnillo filed his notice of appeal on February 21, 2002, from the DUI guilty verdict.
 {¶ 24} Minnillo presents three assignments of error for review.
 I {¶ 25} The first assignment of error asserts that the trial court erred in denying Minnillo's pre-trial motion to suppress evidence. Minnillo's argument in support of this assignment is two-fold: (1) that the police lacked probable cause to arrest Minnillo for DUI; and, (2) Minnillo's statements to the police, at the scene and the hospital, were made without benefit of Miranda warnings.
 {¶ 26} Initially, we note that "at a suppression hearing, the evaluation of evidence and the credibility of witnesses are issues for the trier of fact." State v. Mills (1992), 62 Ohio St.3d 357, 366,582 N.E.2d 972. Consequently, upon review, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. State v. Guysinger (1993), 86 Ohio App.3d 592, 594,621 N.E.2d 726. The appellate court must independently determine as a matter of law, without deferring to the trial court's conclusions, whether the facts meet the applicable legal standard. State v. Klein
(1991), 73 Ohio App.3d 486, 488, 597 N.E.2d 1141.
 {¶ 27} Probable cause for an arrest exists where, at the moment of the arrest, the facts and circumstances within the officer's knowledge and of which the officer had reasonably trustworthy information were sufficient to warrant a prudent man to believe that the accused had committed the offense. Beck v. Ohio (1964), 379 U.S. 89, 91,85 S.Ct. 223, 225, 13 L.Ed.2d 142; State v. Timson (1974), 38 Ohio St.2d 122,311 N.E.2d 16. We find, from the facts in this case, that the arrest of Minnillo occurred at the hospital when Minnillo was advised that he was under arrest for DUI. It was at that point when there was (1) an intent to arrest, (2) under real or pretended authority, (3) accompanied by an actual or constructive seizure or detention of the person, (4) which is so understood by the person arrested. State v. Darrah (1980),64 Ohio St.2d 22, 26, 412 N.E.2d 1328.
 {¶ 28} The police in this case personally observed sufficient indicia of intoxication to support an arrest for DUI. These indicia include the following: a strong odor of alcohol on Minnillo's breath; Minnillo's glassy, blood-shot eyes; Minnillo providing unresponsive answers to questions posed him and exhibiting angry, violent mood swings to the police accompanied by verbal abuse of the officers; the presence of an open beer can in the front passenger seat area of Minnillo's car; the presence of a closed beer bottle in the front driver's seat area of Minnillo's car. In addition to these personal observations, the police had reasonably trustworthy information through Klinger, and their physical investigation of the crash site, that Minnillo's driving was erratic and impaired when he had weaved over the center line of traffic three times, had reached for something in the area of his passenger seat just prior to losing control on the shoulder of the highway, and had precipitated a serious accident on the highway when he lost control of his vehicle while weaving onto the shoulder of the highway and striking a construction barrier and warning barrel.
 {¶ 29} As for the second basis urged by appellant in support of this assignment, appellant fails to iterate the exact language of the purportedly incriminating statement(s) which Minnillo is claimed to have made. Instead, appellant's brief simply makes a general reference to "erratic and incriminating" statements purportedly made by Minnillo "both at the scene of the accident and later at the hospital." Appellant's brief at 14. The only utterances which this generalization could mean to apply are Minnillo yelling for his baby at the accident scene, his telling the police at the scene and at the hospital that there was a baby's picture in his wallet, and yelling profanities at the police at the hospital upon being advised that he would be charged with DUI and his license suspended should he refuse to submit to a test for the presence of alcohol. Appellant believes that these incriminating "statements" should have been suppressed because there was no evidence that he had been Mirandized prior to making these "statements."
 {¶ 30} The warnings set forth in Miranda v. Arizona (1966),384 U.S. 436, 16 L.Ed.2d 694, 86 S.Ct. 1602, are required only when a suspect is subjected to custodial interrogation. The United States Supreme Court defines custodial interrogation as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." Id. at 444. Accordingly, police are not required to administer Miranda warnings to every individual they question. Oregon v. Mathiason (1977),429 U.S. 492, 50 L.Ed.2d 714, 97 S.Ct. 711, State v. Biros (1997),78 Ohio St.3d 426, 440, 678 N.E.2d 891. Rather, the Supreme Court of Ohio has explained:
 {¶ 31} "The determination whether a custodial interrogation has occurred requires an inquiry into how a reasonable man in the suspect's position would have understood his situation. * * * The ultimate inquiry is simply whether there is a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest."
 {¶ 32} Biros, supra. See, also, California v. Beheler (1983),463 U.S. 1121, 1125, 77 L.Ed.2d 1275, 103 S.Ct. 3517.
 {¶ 33} In the present case, Minnillo was not under custodial interrogation at the scene of the accident, therefore Miranda warnings are inapplicable to the baby and baby picture references made at that location. Also, Minnillo was not under custodial interrogation at the emergency room when the officers first spoke with him there about what happened in the accident, thus his unresponsive answers to Holloway's questioning, to-wit, to look in his wallet, and the abrupt change in his demeanor at the moment he was advised he was under arrest for DUI, did not require Miranda warnings.
 {¶ 34} Accordingly, the trial court did not err in denying the motion to suppress evidence.
 {¶ 35} The first assignment of error is overruled.
 II {¶ 36} The second assignment of error asserts that the trial court erred in denying Minnillo's motions for acquittal made pursuant to Crim.R. 29(A).
 {¶ 37} The standard of review for an assignment alleging insufficiency of evidence under Crim.R. 29 was recently iterated by this court, as follows:
 {¶ 38} "Under Crim.R. 29, a trial court `shall not order an entry of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt.' State v. Bridgeman (1978),55 Ohio St.2d 261, 381 N.E.2d 184, syllabus. `A motion for judgment of acquittal under Crim.R. 29(A) should only be granted where reasonable minds could not fail to find reasonable doubt.' State v. Apanovitch
(1987), 33 Ohio St.3d 19, 23, 514 N.E.2d 394.
 {¶ 39} "Thus, the test an appellate court must apply in reviewing a challenge based on a denial of a motion for acquittal is the same as a challenge based on the sufficiency of the evidence to support a conviction. See, State v. Bell (May 26, 1994), Cuyahoga App. No. 65356, 1994 Ohio App. LEXIS 2291. In State v. Jenks (1991), 61 Ohio St.3d 259,273, 574 N.E.2d 492, the Ohio Supreme Court set forth the test an appellate court should apply when reviewing the sufficiency of the evidence to support a conviction:
 {¶ 40} "`The relevant inquiry on appeal is whether any reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt. In other words, an appellate court's function when reviewing the sufficiency of the evidence is to examine the evidence admitted at trial and determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt.' Statev. Eley [(1978), 56 Ohio St.2d 169, 383 N.E.2d 132]. See, also, Jacksonv. Virginia (1979), 443 U.S. 307, 61 L.Ed.2d 560, 99 S.Ct. 2781;443 U.S. 307, 61 L.Ed.2d 560, 99 S.Ct. 2781; 443 U.S. 307,61 L.Ed.2d 560, 99 S.Ct. 2781." State v. King, Cuyahoga App. No. 80596, 2002-Ohio-6220, at ¶ 9-11, 2002 Ohio App. LEXIS 6047 at 4-5.
 {¶ 41} Viewing the evidence in a light most favorable to the prosecution, we conclude that the evidence would convince an average citizen that Minnillo, beyond a reasonable doubt, was under the influence of alcohol at the time of the accident.
 {¶ 42} The second assignment of error is overruled.
 III {¶ 43} The third, and final, assignment of error asserts that Minnillo's conviction for DUI was not supported by the manifest weight of the evidence.
 {¶ 44} This court recently spoke to the standard to be applied in a criminal assignment arguing manifest weight of the evidence:
 {¶ 45} "When the argument is made that the conviction is against the manifest weight of the evidence, the appellate court is obliged to consider the weight of the evidence, not its mere legal sufficiency. The defendant has a heavy burden in overcoming the fact finder's verdict. As this court has stated:
 {¶ 46} "`The weight to be given evidence and the credibility of witnesses are determinations to be made by the triers of fact. State v.Thomas (1982), 70 Ohio St.2d 79, 24 O.O.3d 150, 434 N.E.2d 1356. If there was sufficient evidence for the triers of fact to find defendant guilty beyond a reasonable doubt this court will not reverse a guilty verdict based on manifest weight of the evidence. State v. Brown (1988),38 Ohio St.3d 305, 528 N.E.2d 523, paragraph four of the syllabus, certiorari denied (1989), 489 U.S. 1040, 109 S.Ct. 1177,103 L.Ed.2d 239.' State v. Rios (1991), 75 Ohio App.3d 288, 291, 599 N.E.2d 374. See, also, State v. Jenks (1991), 61 Ohio St.3d 259, 273, 574 N.E.2d 492."State v. Barnett, Cuyahoga App. No. 81101, 2002-Ohio-6506, at ¶ 34-35, 2002 Ohio App. LEXIS 6363 at 12-13.
 {¶ 47} In the present case, there was sufficient evidence demonstrating beyond a reasonable doubt that Minnillo was under the influence of alcohol at the time of the accident.
 {¶ 48} The third assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Berea Municipal Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
KENNETH A. ROCCO, P.J., and TERRENCE O'DONNELL, J., CONCUR.